## MARTIN v. MARTIN.

In the statute which enumerates the causes of divorce, the term "the state prison" is limited in meaning to the prison established and maintained by this State at Concord, and does not include a prison in another State, though called there "the state prison."

Conviction and imprisonment in another jurisdiction is not a cause of divorce in this State.

LIBEL for divorce. The cause alleged was conviction in the district court of the United States for the district of Massachusetts, and imprisonment in the State prison in Massachusetts under sentence on that conviction.

*Morrison & Stanley*, for the libellant.

PERLEY, C. J. Among the causes of divorce enumerated in the statute is "conviction of crime and actual imprisonment in the state prison." The question in this case is whether the penitentiary in Massachusetts called there "the state prison," is "the state prison" within the meaning of the term as used in our statute.

"The state prison" is the proper name by which the general penitentiary of this State, established and maintained at Concord, is known in all our legislation. It is so named in the act of 1812, which first provided for the government and regulation of the prison; and in chapter 227 of the Revised Statutes, relating to the same subject. In all the action of the legislature in reference to the election and appointment of officers, and in the appropriations made from time to time for the use of the prison, I have not found a single instance in which any name or designation has been used but simply "the state prison;" and so when "the state prison" is mentioned in common discourse, unless the expression is qualified by unequivocal reference to some other prison it uniformly means the state prison at Concord; and that is as much the proper name of the state prison at Concord, as "the Reform School" is the proper name of that institution at Manchester, or "the State House" of that building at Concord.

The term "state prison" has no general signification applicable to prisons in foreign jurisdictions fixing the nature and degree of the crimes punished by confinement in them. A state prison in the general sense of the term, means, as I understand it, a place of confinement for state prisoners; that is, for persons charged with political offences, and confined for reasons of state. But in this and in some other States, the term has been applied as a proper name to the penitentiary maintained by the State for the confinement of prisoners convicted of certain crimes in distinction from other prisons maintained and used by counties and cities. Because a penitentiary in another State or country is named "the state prison," the name does not show the nature and degree of the crime for which a prisoner is confined in it; and it cannot be supposed that the legislature intended a cause of divorce should depend on the name that might happen to be given to a foreign prison; nor can we believe that it was intended that the courts should be called on to inquire

and determine whether the offences, for which prisoners were confined in foreign prisons, not named state prisons, corresponded in nature and degree with the crimes for which, by the law of this State, convicts are confined in the state prison of this State.

If a man is sentenced to "the state prison," that is, to the general penitentiary of this State, established at Concord, it is for a crime of a certain degree fixed by statute, and a crime of a higher legal character than one for which a criminal is confined in the county jail or other house of correction. But the name given to a foreign prison does not show what crimes are punished by imprisonment in it. If the name of the prison were to govern the construction of our law, our law would be changed as often as the names of foreign prisons might happen to be changed. On the other hand it never could have been the intention that we should undertake to ascertain whether the crimes for which convicts are sentenced to foreign penitentiaries are of the same nature and degree as the state prison offence here, and give effect to convictions and imprisonment in such prisons on the ground that they were equivalent to sentences and imprisonment in the state prison of this State.

In common discourse and in all the legislation of the State, unless this is a solitary exception, the term "the state prison" is always used as the proper name of the general penitentiary established by the State at Concord, and means no other prison, that may be called the state prison in another State or country. If we give it the same meaning in the statute respecting divorces, the cause of divorce is fixed by law and involves a crime of a definite degree and character. To give it any other than the usual and ordinary meaning would be contrary to one of the most familiar of the rules that have been established for the interpretation of statutes, and involve the administration of this law in great difficulty and uncertainty, such as we cannot suppose the legislature intended.

The Revised Statutes first introduced this cause of divorce. The provision is in derogation of the common law, and annexes an additional punishment to the commission of crime. It is therefore to be construed with reasonable strictness. The common meaning of the language used is not to be extended by construction to cases that may be supposed analogous or equivalent.

We are of opinion that "the state prison" mentioned in the statute, which sets forth the causes of divorce, means the general penitentiary of the State established at Concord, known in the legislation of the State and in common discourse by the proper name of "the state prison;" and that the term cannot be extended to include a penitentiary in another State, which may be called there "the state prison."

*Libel dismissed.*